United States District Court
Southern District of Texas
**ENTERED**
November 05, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § <br> § <br> *EX PARTE* APPLICATION OF § <br> SEAFOX INTERNATIONAL LIMITED, § <br> SEAFOX OPERATIONS B.V., AND § <br> SEAFOX CONTRACTORS B.V. FOR § <br> AN ORDER PURSUANT TO 28 U.S.C. § <br> § 1782 TO OBTAIN DISCOVERY IN § <br> AID OF FOREIGN PROCEEDINGS § | Misc. Action No. 4:25-MC-02074 |

**MEMORANDUM OPINION AND ORDER**

Seafox International Limited, Seafox Operations B.V., and Seafox Contractors B.V. (collectively, "Seafox") are part of the global Seafox Group, an organization that specializes in providing support for the offshore oil and gas industry. After a transaction to purchase a jack-up rig from Noble Corporation ("Noble") fell through, Seafox learned that another company and its owner Paulus Bernardus Jacobus Koole (collectively, "Koole") had acquired Seafox's confidential information and used it to come to an agreement with Noble for the jack-up rig. To contest this agreement, Seafox plans to bring a suit in the Netherlands for misappropriation of confidential information and has asked this Court to allow it to serve a subpoena duces tecum on Noble under 28 U.S.C. § 1782.

Pending before the Court is Seafox's *Ex Parte* Application/Other Miscellaneous Relief. (Dkt. No. 1). For the following reasons, Seafox's Request for Judicial Assistance is **GRANTED**.

**I.     BACKGROUND**

Seafox is a globally operated organization with offices in the Netherlands and the Middle East that specializes in providing support for the offshore oil and gas industry. (Dkt. No. 1 at 3). A major part of its business comes from chartering jack-up rigs—a mobile platform that stands on the ocean floor and is used in offshore oil and gas operations. (*Id.*). On April 3, 2025, Seafox learned that one such rig, the Noble Reacher, was for sale by Noble Corporation. (*Id.*). Keen on acquiring the Noble Reacher, Seafox entered into negotiations for the rig with Noble and Tenaz Energy Netherlands B.V. ("Tenaz"). (*Id.*). As an offshore operator, Tenaz was interested in chartering the Noble Reacher for use in its business. (*Id.*).

On July 3, 2025, however, Seafox learned that Noble was ending negotiations and would no longer sell the Noble Reacher. (*Id.*). Seafox was forced to cancel its transaction with Tenaz as a result. (*Id.*). Things came to a head in September 2025 when Seafox learned that several of its employees had resigned to take positions at Koole. (*Id.* at 3–4). After further investigation Seafox also learned that Koole was in the process of purchasing the Noble Reacher from Noble and intended to charter it to Tenaz. (*Id.* at 4). Conversations with Koole soon revealed that this was not a coincidence; several former Seafox employees had given Koole confidential information regarding Seafox's business with the Noble Reacher and that information was used to pursue the transaction. (*Id.*).

In response, Seafox sent several demand letters to Koole and threatened legal action in Dutch court. (*Id.* at 4–5). When Koole failed to adequately respond and a settlement could not be reached, Seafox initiated proceedings in the District Court of

North Holland, Haarlem. (*Id.* at 5). These proceedings sought "the pre-litigation seizure of evidence from [Koole]" as part of Seafox's effort "to investigate its claims against Koole and to confirm the Koole entities involved in the allegations." (*Id.*). Dutch law allows parties to secure documents prior to initiating litigation in this way. (*Id.*).

On October 10, 2025, the Dutch court granted Seafox's request in part and an attachment was levied against Koole's property. (*Id.*). It also set a 14-day time limit for Seafox to bring a claim against Koole. (*Id.* at 6). Should Seafox fail to bring such a claim within the timeframe the attachment will lapse. (*Id.*).

Seafox states that it intends to bring a claim against Koole after it has completed its investigation. (*Id.*). As part of its investigation, Seafox initiated this miscellaneous action to obtain discovery from Noble, a nonparty to the Dutch litigation, under 28 U.S.C. § 1782. (Dkt. No. 1). According to Seafox, Noble is in possession of documents from the Noble Reacher transactions that are relevant to its suit against Koole in the Netherlands. (*Id.* at 2).

## II.     LEGAL STANDARD

Generally, a district court may order a person who resides or is found in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). One way that this happens is when "a foreign or international tribunal" or "any interested person" requests that the district court award such discovery in accordance with the Federal Rules of Civil Procedure. *Id.* Section 1782(a) "aims to provide efficient assistance to parties litigating

3

in foreign tribunals and, by example, to encourage foreign assistance in U.S. Courts." *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473 (5th Cir. 2022).

Section 1782 has three statutory elements: (1) the discovery is sought from an individual located in the district in which the application is filed; (2) the discovery is for use in a legal proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782.

Because courts are not required to grant a Section 1782 discovery application just because it has the authority to do, courts also address four discretionary factors known as the "*Intel* factors." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65, 124 S.Ct. 2466, 2482–84, 159 L.Ed.2d 355 (2004). These factors include: (1) whether the respondent is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the "character" of the foreign proceedings, and the receptivity of the foreign court to U.S. federal court assistance; (3) whether the request attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is "unduly intrusive or burdensome." *Id.*

### III. DISCUSSION

The Court first addresses the Section 1782 statutory factors and then the *Intel* factors. Because all factors weigh in Seafox's favor, the Court grants its Request for Judicial Assistance.

#### A. STATUTORY FACTORS

The Court is satisfied that the statutory factors are met. First, Seafox's Dutch counsel has stated in a sworn affidavit that Noble is based in Houston, Texas. (Dkt. No.

1-1 at 8). Second, the discovery sought is for use in an anticipated Dutch foreign proceeding to support Seafox's claim that Koole misappropriated confidential information from Seafox to acquire the Noble Reacher from Noble. (*Id.* at 7) ("Seafox intends to bring claims against Mr. Koole and the proper Koole entities after completing its investigation of the seized documents and digital files."); *see also Intel Corp.*, 542 U.S. at 247, 124 S.Ct. at 2473 ("[T]he 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'"). Third, Seafox is an "interested person" under Section 1782 because it is a party—the plaintiff—in the reasonably contemplated foreign proceeding. *Intel Corp.*, 542 U.S. at 256, 124 S.Ct. at 2478 ("No doubt litigants are included among, and may be the most common example of, the "interested person[s]" who may invoke § 1782.").

    **B.**    *INTEL* **FACTORS**

The first *Intel* factor, whether the person from whom discovery is sought is a participant in the foreign proceedings, weighs in favor of granting Seafox's Request. Section 1782 is not normally appropriate when discovery is sought from a participant in a foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* at 542 U.S. 264, 124 S.Ct. 2483. None of the individuals or entities from whom discovery is sought here, however, are participants in the reasonably contemplated Dutch proceedings. As such, they "may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

5

The second factor concerns whether the foreign tribunal is receptive to U.S. federal court judicial assistance. *Intel Corp.*, 542 U.S. at 264, 124 S.Ct. at 2483. Courts must "analyze whether there has been a 'clear directive' from the foreign tribunal that it 'would reject evidence' produced in the United States." *See Eni Ghana*, 2022 WL 3156224, at *4 (quoting *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010)). "A clear directive generally derives from 'authoritative proof—in the form of a judicial, executive, or legislative declaration—that the foreign jurisdiction would be hostile to such evidence.'" *Id.* (quoting *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-01559, 2017 WL 2780213, at *9 (N.D. Tex. Aug. 31, 2017)).

While the Court is unaware of a clear directive from the Dutch government, Seafox's Dutch counsel does point out that the Netherlands is a party to the 1970 Hague Convention on Evidence, which allows Dutch courts to submit a request for evidence to the United States. (Dkt. No. 1-1 at 8–9). This would suggest that the Dutch court would be amenable to evidence gathered through the assistance of this Court. (*But see id.* at 9) ("Evidence obtained in a foreign proceeding outside the [Convention] can be used in a Dutch procedure, but will then be reassessed by the Dutch courts on its own merits for consistency and reliability."). Other U.S. courts have also found that Dutch courts are generally receptive to evidence obtained through Section 1782. *See In re NJSC Naftogaz of Ukr.*, No. 3:18-MC-00092, 2019 WL 13203773, at *2 (N.D. Tex. Sept. 30, 2019) (citing *In re Strati*, No. 15-MC-91059, 2018 WL 474999, at *7 (D. Mass. Jan. 18, 2018)); *In re Duizendstraal*, No. 3:95-MC-00150, 1997 WL 195443, at *2 (N.D. Tex. Apr. 16, 1997). As

such, the Court finds that the second *Intel* factor weighs in favor of granting the Application.

The third factor considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265, 124 S.Ct. at 2483. "[C]oncerns of comity do not permit the Court to 'insert[] a generally applicable foreign discoverability rule into the text of § 1782.'" *Eni Ghana*, 2022 WL 3156224, at *5 (quoting *Intel Corp.*, 542 U.S. at 261, 124 S.Ct. at 2481). However, "while the court should not base its § 1782(a) decision on whether this discovery would be allowed in [the foreign country], it may consider [the foreign country's] restrictions and whether this request is an attempt to thwart those restrictions." *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F.Supp.3d 899, 906 (S.D. Tex. June 27, 2016).

At this *ex parte* stage there does not seem to be any indication that Seafox is attempting to circumvent Dutch discoverability rules. Seafox's Dutch counsel has stated in a sworn affidavit that "[t]he discovery sought does not attempt to circumvent any proof-gathering restrictions under Dutch law." (Dkt. No. 1-1 at 8); *compare with Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244–45 (2d Cir. 2018) (holding that an attempt to use Section 1782 to obtain discovery from counsel of a party in a foreign proceeding was an attempt to "circumvent the Netherlands' more restrictive discovery practices"). Further, given the general receptiveness of Dutch courts to Section 1782

applications, it appears unlikely that Seafox's Request is an attempt to evade Dutch law.[1] The third factor thus weighs in favor of granting the Request.

The final factor concerns the intrusive and burdensome nature of the discovery requests. In determining whether a request is overbroad, the Fifth Circuit has explained that the normal discovery rules under Federal Rule of Civil Procedure 26 apply. *See Tex. Keystone, Inc. v. Prime. Nat. Res., Inc.*, 64 F.3d 548, 554 (5th Cir. 2012).

Seafox's Request is not overbroad. It requests only documents in Noble's possession that are specifically related to the Noble Reacher transactions between Noble, Seafox, and Koole. (Dkt. No. 1-2 at 9). The timeframe applicable to each request is also limited to a six-month period (April 3, 2025, to October 1, 2025). (*Id.*). Such a request is hardly burdensome or intrusive. Regardless, any concerns involving the breadth of the subpoena "can properly be addressed through the mechanisms, including objections and motions, specifically provided by Rule 45" after it have been served. *LEG Q LLC*, 2017 WL 3780213, at *13. Therefore, all four *Intel* factors weigh in favor of granting Seafox's Request.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Seafox's Request for Judicial Assistance. It may therefore issue and serve the subpoena attached to its Request as

---

[1] Of course, should Noble have reason to contest this—or any—factor, it may do so through a motion to quash after being served. *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 758 (5th Cir. 2024).

Exhibit 2, together with a copy of this Order, in a manner consistent with the Federal Rules of Civil Procedure.

It is SO ORDERED.

Signed on November 4, 2025.

                                                        _____
                                                        **DREW B. TIPTON**
                                                        **UNITED STATES DISTRICT JUDGE**